# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:13-cv-225-MR-DLH

| | |
|---|---|
| DIRECTV, LLC, a California Limited Liability Company, ) ) ) Plaintiff, ) ) vs. ) ) ) CHARLES HARDY MEADOWS, ) individually, and d/b/a CHARLIE'S, ) a/k/a CHARLIES, ) ) Defendant. ) | **DEFAULT JUDGMENT** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Default Judgment. [Doc. 10]. For the reasons that follow, Plaintiff's motion will be granted.

## PROCEDURAL BACKGROUND

Plaintiff commenced this action by filing its Complaint on August 12, 2013. [Doc. 1]. The Summons issued the following day [Doc. 4], and was thereafter served upon the Defendant September 7, 2013. [Doc. 6]. Defendant's response to Plaintiff's Complaint was due September 30, 2013. [Id.]. The Defendant filed no answer, nor any other document,

responsive to the Plaintiff's Complaint. On October 1, 2013, Plaintiff served a "Notice of Intention to Move for Default" upon the Defendant. [Doc. 7]. The Plaintiff then applied to the Court for entry of default on October 31, 2013, by motion filed that day. [Doc. 8]. The Clerk entered the Defendant's default on November 12, 2013. [Doc. 9]. The Plaintiff filed its motion for default judgment, together with attachments, on November 18, 2013. Since the time of the Clerk's entry of the Defendant's default, the record discloses that the Defendant has not filed any pleading responsive to the Complaint nor has he moved to have his default set aside. Plaintiff's default judgment motion, therefore, is now ripe for resolution.

## **FACTUAL BACKGROUND**[1]

Plaintiff, DIRECTV, LLC, is a limited liability company established under the laws of the State of California. [Doc. 1 at 1]. Plaintiff distributes satellite programming to individuals and entities throughout the United States. [Id.]. Specifically, Plaintiff provides interstate direct broadcast satellite programming to subscribers with specialized satellite receiving equipment who pay for the programming via a subscription fee and, in

---

[1]Following the Clerk's Entry of Default [Doc. 9], Plaintiff's Complaint allegations concerning Defendant's liability are admitted and deemed true. Fed.R.Civ.P. 8(b)(6) (allegations other than those relating to damages are admitted if a responsive pleading is required and the allegations are not denied); Banco Bilboa Vizcaya Argentaria v. Family Rests., Inc., 285 F.3d 111, 114 (1st Cir. 2002) (party who defaults is taken to have conceded truth of factual allegations in complaint as establishing grounds for liability).

return, the subscribers obtain a programming license from Plaintiff. [Id.]. To prevent unauthorized persons and entities from viewing its satellite programming, Plaintiff encrypts its satellite transmissions. Upon payment of the appropriate subscription or license fee, Plaintiff enables a subscriber to unscramble and receive Plaintiff's satellite programming through the use of its equipment. [Doc. 1 at 3]. The result of this commerce is that a subscriber, upon payment of the appropriate fee, can then watch programs on televisions and/or listen to certain audio programs communicated electronically by Plaintiff via satellite directly to the subscriber's home or business. [Doc. 1 at 1].

Plaintiff offers several different satellite television packages as well as premium movie channels for many markets throughout the United States. [Doc. 10-1 at 2]. Plaintiff also markets to subscribers interested in specialized sports packages, one-time viewing movies, and events in the form of pay-per-view channels. [Id.]. Plaintiff charges subscription fees for both residential and commercial customers, however, commercial subscriptions are generally more expensive since the programming will be displayed for public viewing. [Id. at 3]. Plaintiff's revenues are principally derived from subscription fees related to its programming services. [Id.].

Plaintiff operates direct broadcast centers in California and Colorado, and from those locations, Plaintiff transmits its encrypted signals to several satellites in geosynchronous orbits over the Earth. [Doc. 10-2 at 2]. These signals are relayed from the satellites to homes and businesses equipped with specialized receiving equipment leased by Plaintiff that enables a licensed subscriber to unscramble and receive the transmissions. [Id.]. Residential and commercial subscribers alike use the same specialized satellite equipment to receive Plaintiff's programming signal. [Id. at 3]. As a result, it is possible for individuals to move equipment authorized for use in their homes to their commercial establishments thereby receiving Plaintiff's programming transmissions at a lesser, and more importantly, unauthorized subscription fee. [Id.].

The Defendant, Charles Hardy Meadows, is a natural person and the proprietor of the eponymous restaurant he operates in Waynesville, North Carolina, known as "Charlie's" or "Charlies." [Doc. 10-1 at 14]. Plaintiff's documents of record filed in this case indicate that Defendant became a *residential* subscriber with Plaintiff on September 22, 2011. [Id. at 17]. Defendant had no *commercial* account with Plaintiff. [Id. at 4]. Plaintiff leased to Defendant four DirecTV specialized receivers ostensibly to be located in the living room, kitchen, and two bedrooms of his home. [Id. at

23-4]. The television programming Defendant purchased from Plaintiff included, at no additional monthly charge, Plaintiff's "NFL Sunday Ticket 2011"™ package. [Id. at 18].

On November 13, 2011, an investigator working at the behest of Plaintiff traveled to Defendant's restaurant and observed a DIRECTV satellite dish on the premises. [Id. at 8]. When the investigator entered the restaurant, she saw three televisions in operation, at least one of which was connected to a DIRECTV specialized receiver and controlled by a DIRECTV remote. [Id. at 9]. On such television, the investigator observed the broadcast of a National Football League game between the Detroit Lions and the Chicago Bears. [Id. at 8]. On the date of the investigator's visit to the Defendant's premises, the NFL game between the Lions and the Bears was being broadcast as a component of Plaintiff's "NFL Sunday Ticket 2011"™ package. [Id. at 4]. Defendant was not authorized by Plaintiff to receive and to broadcast Plaintiff's "NFL Sunday Ticket 2011"™ television programming in any commercial setting, including his restaurant. [Id.].

## DISCUSSION

Federal Rule of Civil Procedure 55(b)(1) permits the Clerk, in limited circumstances not present here, to enter a default judgment against a

party. "In all other cases, the party must apply to the court for a default judgment." Fed.R.Civ.P. 55(b)(2).  A claimant is not entitled to a judgment by default as a matter of right.  "The dispositions of motions for entries of defaults and default judgments … are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).

The Court begins by addressing the preliminary issue of its jurisdiction.  Plaintiff brings this action pursuant to 47 U.S.C. § 605(e)(3)(A) which entitles a litigant to file a civil action in federal district court to address an alleged violation of 47 U.S.C. § 605(a).  Section 605(a) imposes liability upon a person who, without authorization, receives any interstate or foreign communication transmitted by wire or radio and uses such communication for his own benefit or for the benefit of another not entitled thereto.  Id.  This Court's jurisdiction is properly invoked.

The Court turns now to the consideration of whether a default judgment in favor of Plaintiff is appropriate in this case.  Viewing the matter from the reverse angle, the Court "logically should consider whether factors are present that would later oblige the court to set that default judgment aside."  10 Moore's Federal Practice, § 55.31[2] (Matthew Bender 3d Ed.

2013) (footnote omitted). The factors the Fourth Circuit identifies as necessary for a party to set aside a default[2] are: (1) whether the defaulting party has a meritorious defense, (2) whether the defaulting party acts with reasonable promptness, (3) the personal responsibility of the defaulting party, (4) the prejudice to the non-defaulting party, (5) whether there is a history of dilatory action, and (6) where appropriate, the availability of sanctions less drastic. Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 203 (4th Cir. 2006). Several of these factors need not detain the Court long.

Factors two and six are not at issue in this case. With regard to factor two, the Defendant has not sought to set aside its default nor has he filed any response to Plaintiff's motion for default judgment. Factor six is not at issue because the Clerk's entry of default was consistent with Defendant's failure to plead or otherwise answer Plaintiff's Complaint and was not a sanction, as that term is commonly understood. See, e.g.,

---

[2] Reviewing the denial of a Fed.R.Civ.P. 55(c) motion to set aside entry of default is not the same as reviewing the denial of a Rule 60(b) motion for relief from a default judgment. Although the Fourth Circuit has analyzed Rule 55(c) and Rule 60(b) motions using the same factors, see United States v. Moradi, 673 F.2d 725, 727–28 (4th Cir. 1982), the burden on a movant seeking relief under the two rules differs. While an analysis under each rule weighs similar factors, Rule 60(b)'s "excusable neglect" standard is a more onerous standard than Rule 55(c)'s "good cause" standard, which is more forgiving of party who has merely had default *entered* since that does not implicate any interest in the finality of a *judgment*. Colleton Prep. Academy, Inc. v. Hoover Univ., Inc., 616 F.3d 413, 420 (4th Cir. 2010).

Fed.R.Civ.P. 37(b)(2)(A)(vi) (if a party fails to obey a discovery order, the court may sanction the party by "rendering a default judgment against the disobedient party").

An analysis of factors three and five weigh in favor of Plaintiff. The responsibility for Defendant's default rests with him. The Defendant was properly served with process, he was given notice that Plaintiff would seek entry of default against him, and he was given notice that Plaintiff would seek a default judgment. Defendant has no taken no action in response to any of Plaintiff's initiatives. The Court concludes, therefore, that the history of this case suggests a conscious decision on the part of Defendant to ignore Plaintiff's allegations and its duty to respond thereto, and not merely "dilatory action" on the part of Defendant.

Nothing that has been filed with the Court indicates that the Defendant has any meritorious defense. To enter default judgment, a court must find that the complaint alleges a legitimate cause of action and "the well-pleaded allegations of the complaint support the relief sought." <u>Ryan v. Homecomings Financial Network</u>, 253 F.3d 778, 780 (4th Cir. 2001). In this matter, Plaintiff has pleaded facts consistent with the statute's requirements. In short, Plaintiff has alleged that Defendant removed from his home one of the DIRECTV specialized receivers leased to him for

residential purposes and installed it in his restaurant to provide his patrons NFL television programming entertainment. Plaintiff's documentation establishes that Defendant was only a residential subscriber of Plaintiff's programming and therefore had no permission to use Plaintiff's specialized equipment or satellite communications for commercial purposes. In doing so, however, Defendant bestowed a benefit upon his commercial clientele by allowing them to watch professional football while they dined when they otherwise could not watch an "NFL Sunday Ticket 2011"$^{TM}$ game without the permission of Plaintiff. Further, Defendant bestowed a benefit upon himself by offering his customers greater incentive to eat at his establishment since he provided the live broadcast of otherwise unavailable professional football games. The Plaintiff argues that Defendant's actions in taking his satellite receiver out of his home and installing it at his restaurant were not an accident but were intentional. [Doc. 10-2 at 8]. Given the uncontested facts before the Court, the Court must conclude Defendant's actions were willful and were for a commercial advantage as well as for his private financial gain. The factor concerning whether Defendant has any meritorious defense weighs against him.

Turning to the final factor, whether any prejudice would flow to Plaintiff as the non-defaulting party should the Court refrain from entering

judgment by default against Defendant, the Court concludes Plaintiff would suffer prejudice. The primary purpose behind the civil enforcement of 47 U.S.C. § 605(a) is both specific and general deterrence: the statute is designed to sanction those persons defrauding satellite programming companies, as well as to send a strong message to others who might be considering such behavior. Because the Court has determined that the Defendant benefited from his unauthorized use of Plaintiff's television broadcasting, and could seek to do so again if not sanctioned, Plaintiff would be prejudiced by the Court's failure to enter judgment by default. Therefore, the analysis of this last factor weighs in favor of Plaintiff.

In sum, the Court determines in its discretion that default judgment in favor of Plaintiff is appropriate in this case. After considering the six factors identified by the Fourth Circuit that could lead the appellate court to set aside the default judgment herein, the Court concludes that four factors (numbers 1, 3, 4, and 5) weigh in favor of granting Plaintiff judgment by default, and that two factors (numbers 2 and 6) are not at issue in this case.

The Court now turns to the consideration of damages. The Court may award either actual damages suffered as a result of a violation of § 605, as well as any profits attributable to the violation, or statutory damages of not less than $1,000.00 and not more than $10,000.00. 47 U.S.C. §

605(e)(3)(C)(i)(I)-(II).  Further, upon a finding that a defendant's violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the Court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation.  47 U.S.C. § 605(e)(3)(C)(ii).  Finally, the Court **shall** direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails. 47 U.S.C. § 605(e)(3)(B)(ii) (emphasis added).

    The Plaintiff has opted for statutory damages.  [Doc. 10-2 at 11]. Plaintiff requests the statutory maximum of $10,000 plus some additional exemplary amount in the discretion of the Court arguing both sums are necessary for deterrence purposes.  [Id. at 9].  Plaintiff asserts nothing more than its deterrence argument and that a monetary penalty may cure Defendant's indifference for the statute's requirements.

    The Court, having reviewed the record in this case, including Plaintiff's photographs taken at the time Plaintiff's investigator documented the Defendant's unauthorized broadcast, makes several observations. First, this appears to be the Defendant's only violation.  Second, at the time of day on the date of the violation – dinner time on a Sunday evening in November – the Defendant's restaurant appeared to be empty of

customers. [Doc. 10-1 at 13]. Whatever financial benefit Defendant sought to obtain by drawing customers with Sunday evening football failed to materialize. Third, while the Defendant advertised on his outdoor marquee that Tuesday nights at his restaurant were "Karaoke" nights and Thursday nights were "Open Mic" nights, he did *not* advertise on his marquee that NFL games would be televised on Sundays. [Id. at 15]. Fourth, Defendant's legitimate, private home subscription for Plaintiff's "NFL Sunday Ticket 2011"$^{TM}$ was an included package and carried no monthly charge in addition to his regular monthly license fee. [Id. at 18]. Perhaps for this reason Plaintiff alleged no actual damages caused by Defendant acts. Fifth, Plaintiff has presented nothing to suggest that Defendant imposed a cover charge or imposed premium pricing for food and drinks on the Sunday when he impermissibly broadcast Plaintiff's "NFL Sunday Ticket 2011"$^{TM}$ game. Finally, while the Court in no way condones the Defendant's fraudulent behavior, his restaurant is not a national chain catering to sports enthusiasts who might make a particular point to frequent it if televised football games were available. Defendant's restaurant, as depicted in Plaintiff's photographs, appears to be that of a local eatery, or a hometown bistro. As such, the Defendant could, and likely did, draw some additional patrons with the unauthorized use of Plaintiff's television

programming. However, that does not appear to be the main draw to Defendant's establishment.

Based upon Plaintiff's arguments and all of these considerations, as well as the mandatory costs that must be assessed against the Defendant, the Court concludes that the Defendant is liable for damages in the amount of $1,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). Due to the Defendant's willful violation of the statute for direct or indirect commercial advantage or private financial gain, the Court will consider as guidance, the penalty provision of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. § 75-16, and will treble this amount to $3,000. Finally, the Court has reviewed the Plaintiff's affidavit of costs and fees and finds the same to be reasonable. [Doc. 10-3]. Therefore, the Court will award costs and fees in favor of Plaintiff in the amount of $3,959.50.

## ORDER

Accordingly, **IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Default Judgment [Doc. 10] as to the Defendant is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that the Plaintiff shall have and recover from Defendant total damages in the amount $3,000.00.

**FINALLY IT IS ORDERED** that costs and attorneys' fees in the amount of $3,959.50 be taxed to the Defendant.

**IT IS SO ORDERED.**

Signed: August 8, 2014

Martin Reidinger
United States District Judge